UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL O'HALLORAN, for himself and on behalf of his
minor son GILBERT O'HALLORAN,

                                      Plaintiffs,

                - against -

UNITED AIRLINES EMPLOYEE WELFARE BENEFIT
PLAN and HEALTH CARE SERVICE CORPORATION
d/b/a BLUE CROSS & BLUE SHIELD OF ILLINOIS,

                                  Defendants.

---

COMPLAINT

No. 05 cv 08034 - CM

ECF CASE

## PRELIMINARY STATEMENT

1.    Plaintiff Paul O'Halloran, as subscriber and participant, on his own behalf and on behalf of his minor son Gilbert O'Halloran ("Gilly"), by his attorneys James P. Lagios, Esq. and Iseman, Cunningham, Riester & Hyde, LLP, brings this action against Defendants the United Airlines Employee Welfare Benefit Plan ("Plan") and Health Care Service Corporation, an Illinois mutual legal reserve company doing business as Blue Cross & Blue Shield of Illinois ("HCSC") to recover damages and equitable relief under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and particularly 29 U.S.C. § 1132(a)(1), in relation to health benefits for Gilly

which are due him under the terms of the Plan, and to clarify Gilly's rights for future benefits under the terms of the Plan.

2.      In addition, Plaintiffs seek allowance of reasonable attorney's fees and costs related to this action pursuant to 29 U.S.C. § 1132(g).

## JURISDICTION AND VENUE

3.      Jurisdiction over Plaintiffs' claim is conferred upon the Court pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, and Plaintiffs request the Court to exercise supplemental jurisdiction over any pendant state claims under 28 U.S.C. § 1367(a).

4.      Venue is proper in this Court pursuant to 29 U.S.C. 1132(e)(2) and 28 U.S.C. § 1391(b).

## PARTIES

5.      Plaintiff Paul O'Halloran resides in Hyde Park, Dutchess County, State of New York, and at all times relevant to this Complaint is an employee of United Airlines, Inc. and a participant in the Plan.

2

6.     Plaintiff Gilbert O'Halloran is a minor, the natural son of Paul O'Halloran, and at all times relevant to this Complaint a beneficiary under the Plan.

7.     Defendant United Airlines Employee Welfare Benefit Plan is an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974, as amended.

8.     Defendant Health Care Service Corporation is an Illinois mutual legal reserve corporation trading as "Blue Cross & Blue Shield of Illinois," and is the administrator of the Plan.

## FIRST CAUSE OF ACTION

9.     Plaintiffs reallege each allegation in Paragraphs 1-8 of this Complaint as if set forth fully in this Paragraph 9.

10.     Plaintiff Gilbert O'Halloran was born March 5, 2002.  Gilly suffered a hypoxic ischemic episode during his birth, during which his brain was deprived of oxygen for significant periods of time, resulting in a severe and profound brain injury and an accompanying array of chronic, persistent and critical health issues.

3

11.   Specifically, Gilly suffers from quadriplegia, cerebral palsy, multiple seizure disorder, digestive system/swallowing disorders, respiratory dysfunction, cortical blindness, and severe mental retardation.

12.   The conditions Gilly suffers from lead to a predictably recurring series of complications including airway obstruction, transient and persistent hypoxia (diminished oxygen levels in his blood), aspirational pneumonia resulting from breathing bodily fluids into his own lungs, and bowel obstruction.

13.   Any of the complicating conditions, if not diagnosed and treated in a timely manner, could result in additional permanent and disabling injury to Gilly, including death.

14.   As a result of his condition, Gilly requires continuous monitoring and treatment, he must be fed by a gastrostomy tube, he requires daily and frequent suctioning of mucous secretions, continuous monitoring of oxygen levels which at the present time is accomplished through a pulse oximeter, frequent administration of oxygen, monitoring of his frequent seizure activity, and frequent daily medication which varies depending on his day-to-day condition and any presenting complications.  Gilly has no voluntary purposeful movement of his extremeties, no ability to purposefully grasp with either hand, and no ability to speak or otherwise assist in his personal care.

4

15.    Gilly's condition is life limiting and will not improve.

16.    Gilly's pediatrician, Jane Ferguson, M.D., has determined that Gilly is in need of skilled nursing care twenty-four hours per day, seven days per week.

17.    Without daily interventions for suctioning and maintenance of Gilly's airway, the monitoring of his oxygen saturation and interventions to correct decreased oxygenation levels, and the administration of medications and tube feedings, all provided pursuant to the plan of treatment, Gilly will die.

18.    The Plan distributed to Plaintiff Paul O'Halloran a Summary Plan Description for Pilots in the United Airlines Employee Welfare Benefit Plan (hereinafter, "SPD") applicable to individuals covered under the Plan on and after January 1, 2003.   A copy of the SPD distributed to Plaintiff Paul O'Halloran is attached to this Complaint as Exhibit 1 and incorporated by reference as if set forth fully herein.

19.    The SPD contains a description of the benefits to be provided to Plan participants and beneficiaries under the Plan.

20.    The attached SPD is the most recent summary plan description distributed to Plaintiff Paul O'Halloran.

21.    Upon information and belief, the attached SPD is the summary plan description in effect at all times relevant to this Complaint.

22.    The SPD defines a Covered Expense as "the incurred medical expenses of an employee or Dependent that are recognized as payable under the Traditional Medical Option (*see Section 8*) subject to the exclusions contained within the listed Covered Expenses or the General Exclusions (*see Section 9*)." Exhibit 1 at M-37.

23.    Section 8 of the SPD provides that a Covered Expense includes charges for, among other things, "[s]killed services of a registered nurse (R.N.) or licensed practical nurse (L.P.N.) other than a nurse who lives in your home or who is a member of your immediate family." Exhibit 1 at M-16.

24.    Section 9 of the SPD provides that the plan will not pay for, among other things, "Custodial Care." See Exhibit 1 at M-22.

25.    The SPD defines Custodial Care as "services or supplies that are designed essentially to assist the individual in his or her activities of daily living and personal care (such as help in walking; getting in or out of bed; assistance in bathing, dressing, feeding, or using the toilet; preparation of special diets; and supervision of medication which can usually be self administered) and that . . . can be safely and effectively provided by an individual without the professional training or technical skills of licensed medical or nursing personnel. . ." See Exhibit 1 at M-37, -38.

26.    From November 2002 to August 2004 Gilly was enrolled in a hospice program as his condition had worsened to the point that he was expected to die.

27.    In February 2004, in the midst of Gilly's hospice enrollment, HCSC denied Dr. Ferguson's recommendation of twenty-four hour skilled nursing for Gilly, characterizing the care as "custodial."  A copy of HCSC's 2004 denial dated February 9, 2004 is attached to this Complaint as Exhibit 2 and incorporated by reference as if set forth fully herein.

28.    On internal appeal,  HCSC reversed its initial determination and certified up to eight hours of skilled nursing care per day for Gilly.  A copy of the appeal determination dated February 27, 2004 (the "February 2004 determination") is attached to this Complaint as Exhibit 3 and incorporated by reference as if set forth fully herein.

29.    HCSC subsequently authorized further skilled nursing care for Gilly and certified the skilled nursing services as Medically Necessary under the terms of the Plan.  Two determination letters dated April 28, 2004 (covering successive time periods) are attached to this Complaint as Exhibit 4 and incorporated by reference as if set forth fully herein.

7

30.     Beginning with Gilly's discharge from hospice in August 2004, Plaintiffs began supplementing the skilled nursing paid for by HCSC by hiring Gilly's hospice nurse on a private basis.

31.     The "medical necessity" of 24-hours-per-day, 7-days-per-week skilled nursing care for Gilly is self-evident when reviewing the complexity of Gilly's plan of treatment, certified by Dr. Ferguson, which calls for (without intending to limit the interpretation of the plan of care to exclude any other skilled nursing service):

(i)     administration of medications;

(ii)    suctioning of oral and nasal airway passages;

(iii)   administration of feedings via gastric tube, including daily adjustment of caloric and liquid intakes and coordination of feedings with the administration of gastrointestinal medications;

(iv)    the assessment of vital signs;

(v)     the monitoring of and intervention to control seizure activity; and

(vi)    the monitoring of and intervention to address respiratory issues.

A copy of the plan of treatment is attached hereto as Exhibit 5 and incorporated by reference as if set forth fully herein.

8

32.   The directives in the plan of care must under the laws of the State of New York be performed by a registered professional nurse ("R.N.") or licensed practical nurse ("L.P.N.") when not provided by a family member.  The New York laws and regulations imposing this requirement include Education Law § 990 et. seq. and 8 N.Y.C.R.R. Part 69.

33.   The nursing interventions and other care provided under the plan of treatment allow Gilly to maintain a viable physical condition as he grows. Specifically, nursing interventions provided to Gilly in the last year have permitted him to sleep more than two uninterrupted hours on a regular basis, which has contributed markedly to his growth and well being.

34.   HCSC's February 2004 determination is arbitrary and capricious and without any rational basis because (i) it provides no clinical rationale for denying the additional sixteen hours of daily nursing care recommended by Dr. Ferguson; (ii) it applies a definition of custodial care that is inconsistent with the definition of custodial care in the SPD; and (iii) it ignores the obvious necessity for skilled nursing as evidenced by Gilly's permanent medical condition.

35.   HCSC's February 2004 determination is arbitrary and capricious because it ignores the necessity of a nursing license for the provision of the recommended care for any person other than Gilly's parents.

9

36.    The conditions which give rise to Gilly's need for skilled nursing care are the result of a permanent, irreversible injury.  Gilly will not "get better."

37.    Plaintiffs have exhausted the remedies available to them under the Plan with respect to the February 2004 determination.

## SECOND CAUSE OF ACTION

38.    Plaintiffs reallege each allegation in Paragraphs 1-37 of this Complaint as if set forth fully in this Paragraph 38.

39.    On or about June 10, 2005, HCSC informed Plaintiff Paul O'Halloran that it intended to end coverage for Gilly's skilled nursing entirely as of July 13, 2005.  A copy of the determination is attached to this Complaint as Exhibit 6 and incorporated by reference as if set forth fully herein (the "June 2005 determination").

40.    On June 28, 2005, Gilly's physician requested an expedited appeal of the June 2005 determination by letter of the same date, which included a detailed clinical rationale for the order of skilled nursing.  A copy of the appeal letter is attached to this Complaint as Exhibit 7 and incorporated by reference as if set forth fully herein.

10

41.    On or about July 14, 2005 (one day after the date coverage ended)

HCSC responded to the expedited appeal in writing by mailing a letter to Patricia

Shaver, R.N., at the home care agency providing Gilly's nursing services.  A copy

of the final determination letter is attached to this Complaint as Exhibit 8 and

incorporated by reference as if set forth fully herein (the "July 2005

determination").

42.    The July 2005 determination certifies "intermittent skilled nursing

visits for clinical evaluation" but denies "private duty nursing services."  It states

that "[p]eriodic clinical assessment to detect and distinguish between seizures and

other non-epileptiform events and to detect gastroesophageal reflux and aspiration

is necessary" and further states that "[d]uring the skilled nursing assessment, the

nurse assesses the overall status of the child to detect any impending new medical

problems and to determine if more vigorous chest physical therapy, suctioning,

etc. are needed in addition to the routine care the child receives."  See Exhibit 8.

43.    The July 2005 determination further states, in reference to "routine

care," that "[t]his care was identified as monitoring oxygen levels and

administration of oxygen as needed, administration of enteral medications,

suctioning as needed, administration of enteral feedings via g-tube, nebulizer

11

treatments every four hours, hygiene, repositioning, other activities of daily living, and chest physical therapy." See Exhibit 8.

44.    The July 2005 determination makes no assertion that the "routine care" provided to Gilly is not medically necessary.

45.    The "routine care" referenced by HCSC in no way meets the definition of "Custodial Care" specified in the SPD. HCSC has wrongfully and egregiously equated "help with walking, getting out of bed," etc., with monitoring oxygenation levels, suctioning and maintaining open airways and the assessment, diagnosis and treatment of aspirational pneumonia, the diagnosis of bowel obstruction, and other skilled assessment and intervention required under the plan of treatment.

46.    HCSC's July 2005 denial is inconsistent with the certification of medical necessity in June 2004 and on each occasion in which it certified as medically necessary and paid for skilled nursing for Gilly between June 2004 and July 2005.

47.    Gilly's condition has not materially changed since the 2004 determination. He continues to suffer from each and every condition which made skilled nursing a necessity for him in 2004 and which make skilled nursing a

necessity for him in 2005 and which will make skilled nursing a necessity for him for as long as he is alive.

48.   HCSC's July 2005 determination fails to identify any change whatsoever in Gilly's condition that would warrant discontinuance of previously approved skilled nursing.

49.   The July 2005 determination fails to provide any clinical rationale for the denial of skilled nursing.  It provides only the clinical rationale for the approval of intermittent skilled nursing assessments.

50.   HCSC's July 2005 determination is arbitrary and capricious and without any rational basis because it:  (i) fails to identify any clinical rationale for the denial of care; (ii) is inexplicably inconsistent with HCSC's own previous determinations; (iii) fails to consider applicable New York law and regulations concerning the provision of services constituting nursing services; (iv) applies a definition of custodial care which is wholly inconsistent with the definition appearing in the SPD; and/or (v) applies a definition of custodial care which is wholly inconsistent with the scope of practice of nursing services recognized in New York.

51.   Since the July 2005 determination, Plaintiff Paul O'Halloran has been employing a skilled nursing service on a private basis to provide care for Gilly.

52.    Plaintiffs have exhausted the remedies available to them under the Plan with respect to HCSC's July 2005 determination.


## THIRD CAUSE OF ACTION

53.    Plaintiffs reallege each of the allegations in Paragraphs 1-52 of this Complaint as if set forth fully in this Paragraph 53.

54.    Plaintiffs have been fighting with HCSC regarding the classification of Gilly's required care virtually since he was born.  An HCSC denial letter dated July 18, 2002 (when Gilly was just four months old) attempts to classify his required care as "custodial."  A copy of the July 18, 2002 denial letter is attached to this Complaint as Exhibit 9 and incorporated by reference as if set forth fully herein.

55.    There is no reasonable medical hope that Gilly's condition will improve to the point of no longer required skilled nursing care.

56.    A determinative order of this Court regarding Gilly's eligibility for skilled nursing care under the Plan is required and necessary to prevent further vexatious determinations by HCSC.  It is a certainty that, absent such an order, HCSC will simply make future denials based on the same "custodial" classification.

57.   Without an order from this Court, it is a certainty that HCSC will again attempt to limit the skilled nursing services provided to Gilly under the Plan or otherwise characterize his need for care as "custodial," requiring the O'Halloran's to expend significant time, energy, and funds to correct its determination.

**WHEREFORE**, Plaintiffs respectfully request:

(a)   on the first cause of action, entry of judgment in its favor for all expenses incurred by Plaintiffs in providing skilled nursing to Gilly from August 2004 to July 2005;

(b)   on the second cause of action, entry of judgment in its favor for all expenses incurred by Plaintiffs in providing skilled nursing to Gilly from July 2005 to the date of judgment;

(c)   on the third cause of action, entry of judgment in its favor ordering HCSC to pay for twenty-four-hours-per-day, seven-days-per-week skilled nursing care for Gilly for as long as the physiological conditions persist which made skilled nursing for Gilly "medically necessary" on February 27, 2004;

(d)    attorney's fees pursuant to 29 U.S.C. 1132(g), including all costs and

disbursements related hereto;

(e)    pre-judgment interest on all amounts awarded pursuant to (a) and (b);

and

(f)    such other and further relief as the Court deems just and proper.


DATED:    September 14, 2005

ISEMAN, CUNNINGHAM, RIESTER
& HYDE, L.L.P.

By:    /s/ James P. Lagios
James P. Lagios (JL-1976)
Attorneys for Plaintiffs
9 Thurlow Terrace
Albany, New York 12203
(518) 462-3000-T
(518) 462-4199-F

16